UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER SECRIST | : | |
| 7 Wharton Drive | : | CIVIL ACTION |
| Glen Mills, PA 19342 | : | |
|         Plaintiff, | : | NO.: |
| | : | |
|     v. | : | |
| | : | |
| UNUM Life Insurance Company of America | : | |
| 2211 Congress Street | : | |
| Portland, ME 04122 | : | |
|         Defendant. | : | |
| | : | |

## **COMPLAINT**

Plaintiff, Jennifer Secrist, hereby brings a civil action against Defendant, Unum Life Insurance Company of America, based on the following:

### **The Parties**

1.     Plaintiff, Jennifer Secrist (Secrist), an adult individual, is a citizen of the Commonwealth of Pennsylvania, who presently resides at 7 Wharton Drive, Glen Mills, PA 19342.

2.     Defendant, Unum Life Insurance Company of America (Unum), is upon information and belief an insurance company licensed to do business in the Commonwealth of Pennsylvania.  Upon information and belief, Unum's principal mailing address for purposes of effectuating service of process is 2211 Congress Street, Portland, ME 04122.

3.     At all times material hereto prior to Plaintiff's disability, she was employed by Tenet Healthcare Corporation (Tenet), and pursuant to Plaintiff's employment with Tenet, she was eligible to receive long term disability benefits pursuant to the Tenet-sponsored Group Long Term Disability Plan ("The Plan").

4.      This Court has jurisdiction pursuant to the Employment Retirement Income Security Act of 1974, as amended ("ERISA") 29 U.S.C. §1132(a).

5.      Venue is proper in this matter pursuant to Title 28, United States Code, Section 1391(a), in that at all times material hereto, the Plaintiff was eligible for benefits pursuant to The Plan, and Plaintiff was employed within the Commonwealth of Pennsylvania.

6.      At all times material hereto, Defendant Unum acted by and through its agents, servants, and employees who acted within the scope of their authority from Defendant.

**THE FACTS**
**PLAINTIFF'S LONG TERM DISABILITY PLAN**

7.      The allegations in paragraphs 1 through 6 are incorporated herein by reference as if fully set forth herein.

8.      Plaintiff was continuously employed as a Clinical Nurse II for Tenet Healthcare Corporation (Tenet) through June 29, 2015.

9.      At all material times hereto, Plaintiff has been eligible for benefits under Tenet's Group Long Term Disability Plan.  The Plan provides for payment of 60% of an employee's salary in the event of total disability.  At the time of Plaintiff's disability, her gross monthly salary was $6,069.96, resulting in a monthly benefit amount of $3,641.98.

10.      The Policy provides in pertinent part as follows:

*You are disabled when Unum determines that:*
- *you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and*
- *you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.*

*After 12 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience; and*

***Gainful occupation*** *means an occupation that is or can be expected to provide you with an income at least equal to 60% of your indexed monthly earnings.*

11.     Said policy qualifies as an employee benefit plan under ERISA.

12.     As set forth in greater detail below, at all material times hereto, since June 29, 2015, Plaintiff has suffered from marked residual effects secondary to fusion of C5-6 and C6-7, including pain in the neck and right upper extremity, decreased sensation in her dominant hand, sciatica, and diminished balance.

## SUMMARY OF PLAINTIFF'S DISABILITIES

13.     The allegations in paragraphs 1 through 12 are incorporated herein by reference as if fully set forth herein.

14.     As set for the in greater detail below, at all material times hereto, since fusion of C5-6 and C6-7, including pain in the neck and right upper extremity, decreased sensation in her dominant hand, sciatica, and diminished balance.

## DEFENDANT'S ARBITRARY AND CAPRICIOUS TERMINATION AND DENIAL OF PLAINTIFF'S LONG TERM DISABILITY BENEFITS

15.     The allegations in paragraphs 1 through 14 are incorporated by reference as if fully set forth herein.

16.     On August 14, 2014, Plaintiff underwent a C5-6 anterior cervical discectomy, fusion and disk implant.

17.     On May 12, 2015, Plaintiff underwent cervical MRI, revealing new occurrence of C6-7 posterior herniation.

18.     On June 29, 2015, Plaintiff's work with Tenet ended due to progression of and limitation from her cervical injuries.

19.     On August 17, 2015, Plaintiff underwent C6-7 anterior discectomy and fusion.

20.     On January 11, 2016, Plaintiff underwent a cervical MRI noting degenerative changes and progression of cervical damage.

21.     On July 26, 2016, Plaintiff's treating physician, Dr. Limpert, discussed with Plaintiff what he described as "sedentary capacity per disability definitions with the claimant." (Exhibit A).

22.     Dr. Limpert noted that the Plaintiff "agrees she physically does these [sedentary] things," with limitations, but failed to define what activities or definitions were addressed, the duration of such activities, or the recovery time following attempts at these activities.  (Id.).

23.     On September 14, 2016, Plaintiff's treating physician, Dr. Limpert, provided information to Defendant regarding Plaintiff's ability to work on a form drafted by Defendant. (Exhibit B).

24.     Dr. Limpert's statement was equivocal, checking a box indicating "yes" that the Plaintiff "could perform… [certain] occupational demands on a full-time and full duty basis," before more fully explaining that "persistent cervical disc herniation with nerve impingement evidence on MRI causing disabling degrees of pain not corrected by surgical or medical therapy" were "precluding Ms. Secrist from returning to work full time and full duty at this time."  (Id.).

25.     On September 21, 2016, Defendant received a fax from Dr. O'Rourke's office, with handwritten notes on Defendant's fax cover sheet noting that the Plaintiff was last seen on June 21, 2016, and that she was "cleared from neurosurgery."  No signature was provided with this statement, no clarity was provided as to what the Plaintiff was "cleared" for, and Defendant did not follow up for confirmation or clarification with Dr. O'Rourke.  (Exhibit C).

26.     Attached to the September 21, 2016, fax was a treatment note by Dr. O'Rourke, in which he notes Plaintiff's ongoing cervical spondylosis and myelopathy, and recommends a consult to the spine center and conservative management. (Exhibit D).

27.     On November 23, 2016, Defendant's employee, Matthew Vail, erroneously opined that Dr. Limpert and Dr. O'Rourke provided sedentary duty limitations, and referred the file for vocational evaluation. Mr. Vail was listed simply as a "director" on his documentation, and no medical qualifications or title were provided. (Exhibit E).

28.     On November 28, 2016, Defendant's employee, Deborah Maxcy, provided a vocational assessment based upon the limitations proposed to but not adopted by Dr. Limpert in his September 14, 2016 form. She reported that three positions existed under those restrictions. (Exhibit F).

29.     On December 16, 2016, Defendant's employee, Rachel Kraus, issued a letter terminating future benefits as of December 25, 2016, specifically relying upon Dr. Limpert's alleged concession that Plaintiff can perform a sedentary occupation and asserting that Dr. O'Rourke had cleared the Plaintiff to work in a sedentary occupation. (Exhibit G).

30.     On December 19, 2016, Dr. Limpert reported that Plaintiff experienced numbness in the hands and weakness in the arms. (Exhibit H).

31.     On January 27, 2017, Plaintiff underwent an EMG at the direction of Dr. Limpert. This EMG revealed right C5 and right C7 radiculopathy; notably, Plaintiff's prior fusions were at C5-6 and C6-7. (Exhibit I).

32.     In January 2017, Plaintiff attempted to work as a nurse, three days per week. She was terminated after less than two months on March 6, 2017, however, due to an inability to maintain physical and mental focus.

33.     On February 1, 2017, Dr. Limpert asked Plaintiff to terminate her attempt to work as beyond her capacities.  (Exhibit J).

34.     On April 10, 2017, Dr. Limpert, Ms. Secrist's primary care physician since 2014, reported the Plaintiff's ongoing deterioration, poor prognosis and herniated disc post-fusion, chronic cervical radiculopathy, and headache, with pain and weakness in the right arm and hand. (Exhibit K).

35.     Dr. Limpert elaborated that the Plaintiff:

- Could sit no more than two hours per workday;

- Could stand or walk no more than two hours per workday;

- Was limited to walking two blocks;

- Would suffer from frequent interference with concentration due to pain in simple tasks;

- Would miss at least four days per month;

- Could use the right hand fingers for fine manipulation no more than 25% of the day;

- Could use her bilateral hands for grasping no more than 50% of the day;

- Could rarely look down, turn head to the right or left, hold her head in a static position, or lift 10 pounds.

(Id.).

36.     On April 27, 2017, Plaintiff underwent a functional capacity evaluation with Dan McConnell, D.P.T., reflecting significant limitations in positional tolerances, fatigability, upper extremity range of motion, and pain.  (Exhibit L).

37.     Dr. McConnell concluded that Plaintiff was unable to perform even sedentary activity on a full time basis. (Id.).

38.     On June 13, 2017, Plaintiff filed an appeal of Defendant's denial of her benefits. (Exhibit M, without attachments).

39.     On July 17, 2017, Dr. Limpert, in response to an inquiry from Defendant, confirmed that he did not believe Ms. Secrist could conduct full time sedentary employment as of December 16, 2016. He elaborated in an attached narrative that Plaintiff credibly reported the dramatic nature and severity of pain, as well as impaired concentration and function. (Exhibit N).

40.     No statement of the Plaintiff's daily activities, child care arrangements, or living arrangements was taken by the insurer on or after December 16, 2016.

41.     On July 17, 2017, a statement was issued by Defendant's employee, Chris Bartlett. (Exhibit O).

42.     The only evidence of Dr. Bartlett's qualifications is the notation in his Unum signature line, wherein he notes "MD" following his name and alleges board certification in family practice. No further information on his experience or qualifications was provided. (Id.).

43.     Dr. Bartlett, without information from the Plaintiff on her activities since December 16, 2016, determined that the Plaintiff's presumed activities since that time were inconsistent with Dr. Limpert's restrictions. (Id.).

44.     Via decision dated July 25, 2017, Defendant's employee Patricia Bell upheld Unum's prior decision to deny Plaintiff's request for benefits. (Exhibit P).

45.     Defendant arbitrarily and capriciously made its decision to terminate Ms. Secrist's disability benefits, erroneously asserting that her treating providers released her to sedentary duties and relying upon unsubstantiated assumptions as to her daily activities.

46.     Defendant arbitrarily and capriciously made its decision to deny Plaintiff's LTD benefits without appropriately taking into consideration or addressing the evidence supporting Ms. Secrist's disability status.

47.     Defendant has made its decision to deny Ms. Secrist LTD benefits without sufficient credible medical evidence that she is capable of engaging in employment on a full-time basis.

48.     In accordance with the terms of the Policy, Ms. Secrist is eligible to receive monthly disability benefits until the earliest of the following dates: (1) June 14, 2040; or (2) the date upon which she fails to cooperate with the defendant in the administration of the claim.

49.     Because Defendant was to have provided this employee benefit plan, which is covered by ERISA, Defendant is obligated to abide by the terms and conditions as stated in its own policy of coverage.

50.     Under ERISA, Defendant Unum is bound to honor its own contract.

51.     Defendant has arbitrarily and capriciously failed and refused to abide by the terms and conditions as stated in its own policy.

**WHEREFORE,** Plaintiff Jennifer Secrist demands judgment against Defendant Unum in the amount of 60% of Plaintiff's gross monthly salary, less applicable offsets, as per the express terms of the Policy, commencing as of December 26, 2016, and continuing thereon until the death of the Plaintiff or the cessation of Plaintiff's total disability, together with costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

Respectfully Submitted,

LAW OFFICE OF JAMIE R. HALL

DATED: 10|18|17

JAMIE R. HALL, ESQUIRE
PA Atty. #207376
Law Office of Jamie R. Hall
110 East State Street, Suite 12
Kennett Square, PA 19348
(P) (610)570-5253
(F) (215)853-3644
jhall@jrhlegal.com
Attorney for Plaintiff